MOREL *et al.* *r.* SYLVANIA & GIRARD RAILROAD CO. *et al.*

The petition was not open to general demurrer, as it set forth a cause of action for the breach of a supersedeas bond.

JUNE 28, 1910.

The Sylvania & Girard Railroad Company and certain individuals, one of whom was alleged to be the president and the others directors of the corporation, applied for the writ of mandamus against Morel, Overstreet, Mock, and certain agents of the corporation, to compel the defendants to deliver to them all the books, papers, money, and other property of the company in their possession or control, it being alleged that one of the defendants was the former president and the other two were directors of the corporation, but that they were no longer so.  The defendants claimed to be still in office and entitled to retain custody of the books, money, and other property of the company.  The judge granted the writ of mandamus absolute.  Defendants excepted and brought

the case to this court, where the judgment of the lower court was affirmed. *Morel* v. *Hoge,* 130 *Ga.* 625 (61 S. E. 487, 16 L. R. A. (N. S.) 1136). In order to obtain a supersedeas, the defendants gave a bond in the sum of $5,000, payable to the plaintiffs, and containing the following condition: "Should the said principal obligors well and truly pay or cause to be paid to the said obligees all damages that may be sustained by said obligees by virtue of the issuing out of a bill of exceptions to the Supreme Court, and a granting of a supersedeas by the court, upon the giving of this bond as required by the court, in granting said supersedeas, in the mandamus case brought by the said obligees against the said obligors, in the superior court of said county of Screven, in which a mandamus absolute was granted by the judge of the superior court of said county, on the 31st day of January, 1908, and the said principal obligors have filed their bill of exceptions to the Supreme Court of this State, then and in that event this bond to be void; otherwise to be of force." After the termination of the former case, suit was brought by the obligees in the bond against the obligors. It was alleged that by reason of the exceptions to the Supreme Court and the granting of the supersedeas, Morel, acting as president, and two of the other defendants, "acting as superintendent," illegally and without authority, and contrary to the authority of the railroad company, remained in possession of the offices mentioned, to which others had been regularly and legally elected, and that they "were illegally and without the authority of said corporation paid out of the funds of said railroad corporation specified amounts," and "that by reason of said funds having been illegally paid to the said [named persons], they being in illegal possession of the offices aforesaid, the said railroad company has also been forced to pay to the officers, in whom legal possession of such offices was vested at the time aforesaid," an amount by way of salaries in addition to the funds paid out as above stated, thereby being forced to pay salaries twice. The defendants filed a general demurrer, which was overruled by the court, and they excepted.

*J. W. Overstreet,* for plaintiffs in error.

*White & Lovett,* contra.

FISH, C. J. (After stating the facts.) Fairly construed, we understand the petition to mean that the defendants, after a judg-

ment had been rendered against them, declaring that they were il-
legally holding the books, money, and property of the railroad
company and ought to deliver them to the plaintiffs in the former
proceeding, brought the case to this court, retained possession of
the money and property, gave the bond above indicated in
order that they might do so pending the exception to this court,
and by virtue of the possession thus retained salaries were paid to
the acting president and acting superintendents, who were no
longer legal officers of the corporation; and that this was done
without the authority of the railroad company.   There was no
special demurrer, but the defendants relied solely upon a general
demurrer.   If an illegal appropriation of the funds of the corpora-
tion, to pay the salaries of persons acting as officers of the corpora-
tion, who were no longer lawfully in office, as had been declared by
the judgment of the court, pending an exception to this court, did
not fall within the terms of the bond, it is not easy to see just what
damages were  intended by the presiding judge in requiring it, or
by the parties in giving it.   According to the allegations of the
plaintiffs in the present case, a person claiming to be the president
of the company, but who had ceased to be such, and other defend-
ants held the money of the company in their possession while the
case was in this court by virtue of the supersedeas bond given, and
while the matter was in that condition some of the funds of the
company were appropriated, or caused to be appropriated, to the
payment of salaries to some of the defendants, who were not en-
titled thereto.   The judgment of the superior court was affirmed,
by which it had been directed that the defendants deliver up the
books, money, and property of the company, but, pending excep-
tion, some of it had been appropriated to salaries for some of the
defendants who had been found to be out of office.   The present
petition alleges that this was without authority of the corporation
and contrary to its authority.   We think that this makes a case
of damages falling within the purpose and intent of the superse-
deas bond.   *Waycross Air-Line Ry. Co.* v. *Offerman & Western R.
Co.,* 114 *Ga.* 727 (40 S. E. 738), 119 *Ga.* 983 (47 S. E. 582).

It has been held by a number of courts that a de jure officer can
not recover from the government, or its subordinate corporations,
the amount of salary paid to a de facto officer while the latter oc-
cupied the office and discharged its duties, although he was subse-

quently ousted at the instance of the de jure officer; but that the de jure officer, after judgment of ouster, might bring an action against the de facto officer for money had and received to his use. It has also been held that if the de facto officer, who is not de jure entitled to the office, brings suit against a municipality or county to recover his salary, the defendant may call in question his right to the office. It is unnecessary to discuss the question whether all the rulings made on this subject are theoretically logical, or the conflict which exists in the authorities in regard to some of these questions. For the present purpose it is enough to call attention to the fact that the basis on which many of the decisions in regard to public officers rest is the necessity for the government to proceed with the exercise of its functions and for the public to be able to deal with some person apparently rightfully discharging the duties of the office, and, in order that this may be done, that the organized public in the form of the government itself may, if it sees fit, recognize the de facto officer and pay his salary while he discharges the duties of the office. See Mayfield *v.* Moore, 53 Ill. 428 (5 Am. R. 52); McCue *v.* County of Wapello, 56 Iowa, 698 (41 Am. R. 134); Dolan *v.* Mayor etc., 68 N. Y. 280 (23 Am. R. 168); Commissioners of Saline County *v.* Anderson, 20 Kan. 298 (27 Am. R. 171). The present case does not involve a governmental corporation, but a case of an ex-president and ex-officials of a railroad corporation remaining in possession and causing salaries to be paid to themselves, without authority of the company, pending an appeal from a judgment commanding them to deliver up the custody to their lawful successors. The rights of the public in dealing with de facto officers are not involved. According to the allegations, it is the persons claiming to be de facto officers of this railroad company, while seeking to reverse a judgment commanding them to deliver up its property, who are setting up their own de facto position as justifying payment to themselves of salaries from the funds of the company without its authority. See Waterman *v.* Chicago &c. R. Co., 139 Ill. 658 (15 L. R. A. 418, 29 N. E. 689, 32 Am. St. R. 228).

We deal with this case as we find it under the allegations of the plaintiffs, which are admitted by the general demurrer, and do not discuss other questions not raised by the demurrer.

*Judgment affirmed. All the Justices concur.*